at the appointment. You may proceed. Thank you, Your Honor. May it please the Court, my name is Robert Richman. I represent Kevin Green on appeal and also in the District Court. In my brief, I raise two issues, both the sufficiency of the evidence and the District Court's refusal to instruct on multiple conspiracies. In this argument, I intend to focus on the Green was convicted at trial of a conspiracy to distribute more than 400 grams of fentanyl. And because the District Court refused to give a multiple conspiracy instruction, the jury was free to aggregate the quantities seized in the three searches in this case without regard to whether those quantities were part of a single conspiracy or multiple conspiracies. And the government urged the jury to do just that, arguing in closing that the three seizures added up to 418 grams, which alone was sufficient to take us above the 400-gram threshold. A defendant is entitled to a multiple conspiracy instruction where, quote, the evidence can support a finding of multiple conspiracies. That's this Court's language from United States v. Nevels. Here, the evidence established that in February and March of 2019, Abari and Hall had a falling out with Green and stopped dealing with him. And the 20 grams that were seized in April of 2019 had nothing to do with Green. Both Hall, who was a cooperating witness, and Wallace Johnson, another government witness, testified that those drugs came from a dealer named Moe, who brought them from Chicago. Similarly, the 298 grams that were seized in July of 2019 had nothing to do with Abari and Hall. As Hall testified, he knew nothing about those drugs. They had nothing to do with this conspiracy. Notably, in its brief, the government, at pages 32 and 33, outlines the evidence of a single conspiracy, does not mention anything about the 20 grams seized in April of 2019 because it was not part of the same conspiracy. So do you think the July seizure was part of the charge conspiracy? You seem to be saying neither was, huh? Well, I would argue that neither was, Your Honor, but even if one could... You think a jury should have had to choose one or the other at a minimum, I gather, is your point. Our position was there were three conspiracies, but at a minimum, there were two. I mean, even if Mr. Green had a single conspiracy that extended through... Or the charge conspiracy could have been the Abari-Hall... True. True. But while it is certainly correct, Your Honor, that multiple transactions can all be part of a single conspiracy, there has to be a unifying agreement or a unifying common purpose, which is the language that the courts use, that connect all of those transactions. Here, there was no agreement that connected the April transaction involving Hall, Abari, and Moe with the July transaction involving Green. I thought you were saying that's a jury question. It is a jury question. That is what I'm saying. It's a jury argument you're making. Yes, that... Unifying is a matter of law. Correct. That's correct, Your Honor. That I'm saying that it is up to the jury to make that determination, which required a jury instruction. And we know that the jury struggled with this issue because they asked the court for guidance on whether they could hold the defendants responsible for drug quantities that came up after those defendants had left the conspiracy. That was a second opportunity for the court to instruct on multiple conspiracies. But instead, the court instructed on withdrawal from the conspiracy, which was not an issue that had been raised in this case. Now, how about prejudice? The government says there was other evidence that would get you over the 400. And I guess your point is, unless you answer, but I heard you say earlier they relied on the seizures, and so... I mean, first of all, the government asked the jury to find the 400 grams based on the seizures. But the law states that when a jury can convict, you know, when the instructions are such that a jury is given a proper ground to convict and an improper ground to convict, and we don't know which way the jury went, that establishes prejudice. What about... Would the remedy then be a lesser-included verdict under B-1-B, since your prejudice argument really only goes to this 400-gram threshold, or at least would the government have the option to take the B-1-B versus a new trial? Well, our position is that the jury would have had the option of finding less than 400 grams, but the jury also would have had the option of determining that this conspiracy or these conspiracies were not the single conspiracy charged in the indictment. That would have been a basis to acquit. None of the three? None of your proposed three conspiracies was charged? Correct. That the conspiracy from December to July, it was not the same conspiracy as a conspiracy from December to March. And so our position would be that Mr. Green is entitled to a new trial, but certainly at a minimum, and it would be at the government's choice, at a minimum, he could only stand convicted of the lesser-included offense, the more than 40 grams rather than 400 grams, and would be entitled to be resentenced on that basis. Yeah. Although I don't know if the sentence would be any different. The judge... Well, the judge... The judge gave the mandatory minimum, but he said some things. Well... The judge imposed the lowest sentence that he could impose. For your guy, for Abari, he was above the minimum. For Green, it was the lowest sentence he could impose. What is the date that the witness — I'm sorry, I can't find it here. I'm just looking for it. What is the date that the witness said they saw him possessing 1,000 grams of heroin? Do you know what date that witness was referring to? And by date, I mean, was it between December 18 and March 19? It must have been, because he — I don't look — I don't think that he specified a date. Which witness was it, by the way? It was Hall. Thank you. Hall said that he had never seen a kilo of cocaine, but had seen Mr. Green with 1,000 grams of cocaine. Thank you. I don't think he specified a date, but the evidence was clear that all contact between Abari and Hall and Green ended by March. So it must have been in that period. Thank you very much. Now, that was cocaine versus fentanyl? I believe that was heroin mixed with fentanyl. Was it the charged drug? It was. It was. So it's the thought that if they credited the testimony, then that would have taken them over the 400. There were other ways to get over the 400. We don't disagree with that, but there's no way to know on what basis the jury made its determination, and the easiest way was by adding up the seized quantities. If there are no further questions, I will turn the argument over to my co-counsel. Now, is one of you saving time for rebuttal? I am, Your Honor. So you'll be the only lawyer arguing rebuttal? Is that how you've arranged it? Yes. All right. Very well. Thank you. All right, then. Mr. Bruder, we see that you are also appointed under the Criminal Justice Act and appreciate your willingness to serve as well, and you may proceed. Thank you, Your Honor. May it please the Court, my name is Glenn Bruder. I represent one of the appellants in this matter, Anthony Ibarri. Unlike Mr. Richman, who was present at the trial, my involvement was a bit unusual. Following the trial, Mr. Ibarri's trial counsel encountered a serious medical problem and was no longer able to continue, so I was appointed to assist Mr. Ibarri at his sentencing and then in connection with this appeal. So unlike Mr. Richman, who was present, I'm relying on the trial record to educate myself about what actually happened here. I'm somewhat tempted to address the conspiracy issue by simply saying, ditto to what Mr. Richman just said, but I would like to – Your Honor, but I think you should address prejudice as to your client, given that the sentence was well above the statutory minimum. Is that relevant? I certainly think it is relevant because I think the quantity, which the jury found probably was incorporated into that sentence, although it's not entirely clear from the trial judge's comments how much quantity affected his sentence versus other issues. But I do want to highlight a couple aspects that are unique to Mr. Ibarri, which I think illustrate the prejudice to him. Both appellants challenged the government's claim of a single unified conspiracy, which lasted until sometime in late July 2019. The appellants requested multiple conspiracy instructions. That request was denied by the trial judge. At trial, however, the jury heard testimony with respect to Mr. Ibarri that, let's say, greatly undermined the government's outline of this particular conspiracy. The first, referenced by Mr. Richman, was Hall's testimony that by February of 2019, both he and Ibarri had quit dealing with Green and had found alternative sources of supply. The second, and I think even more compelling bit of evidence, is that by April 2019, Mr. Ibarri had been arrested and was in custody. And one of the seizures made by the government took place in July of 2019, after Mr. Ibarri had been sitting in jail for three months. It's a bit difficult for any reasonable person to see how this is a single unified conspiracy between these individuals when Mr. Ibarri is sitting in jail for more than 50 percent of the time that the government alleged this conspiracy took place. Why is that dispositive? I mean, if one conspirator is arrested, why doesn't the charged conspiracy continue with the rest of the people? Well, among other things... Your man would have to argue withdrawal if he wanted to avoid accountability for the arrest. Well, he argued that these were multiple conspiracies for a variety of reasons. I'm just not sure how the arrest... Well, here's one... ...arguing about the arrest. Yeah, and this kind of melds into the judge's instructions on withdrawal. Clearly the jury was confused. This kind of melds into the judge's instructions on withdrawal. At the conclusion of the trial, and maybe the best way for me to address that is to go there, rather than doing the straightforward thing, which is to read the multiple conspiracy instruction, the judge essentially created his own instruction on withdrawal, an argument that Mr. Richmond noted had not been raised by either defendant. But here's the problems with that. First of all, the multiple conspiracy instruction, which had been requested by the appellants, places the burden of proof on the government. The judge's instruction on withdrawal essentially turned around that burden of proof and placed the burden of proof on the defendants, who hadn't introduced any evidence on that, probably because they weren't raising that as a defense. Yeah, but the jury looked like it might have been going there, so I can understand why the judge thought he should explain to them what the rule is on withdrawal, but I can see your argument he maybe should have given both. And that is my argument, and the other argument, Your Honor, is even if the judge is going to instruct on withdrawal, the instruction that he gave was incomplete, because it placed a burden on Mr. Abari to essentially affirmatively come forward and renounce his involvement in the conspiracy, and that is not the law in this circuit. In United States v. Bolden, which is cited at page 24 of my brief, oops, wrong case, Your Honor, and give me just a second here. In United States v. Perez-Guerrero, which is cited at page 7 of my reply brief, a defendant's incarceration, standing alone, is evidence of withdrawal from a conspiracy unless the government can make an affirmative showing of the defendant's continued involvement in the conspiracy, which did not happen in this case. So if the judge wanted to instruct on withdrawal, he should have given a complete and thorough instruction, which would have noted for the jury that it was now the government's affirmative burden upon the defendant's incarceration to show some evidence of his continuing involvement in this conspiracy, which they did not do. So based on that, Your Honor, it is my position that Mr. Abari was prejudiced by what happened and that he, along with Mr. Green, is entitled to a retrial. I would like to add just very briefly one more area in which Mr. Abari was prejudiced and which potentially added to the guilty verdict in this case, and that is the government's frank violation of the rule of completeness under Federal Rule of Evidence 106. Mr. Abari made a 36-minute recorded statement following his arrest. The government wanted to introduce that statement, but rather than introducing the entire relatively brief statement, it introduced only a small snippet of it, roughly 10%.  Which included, by my count, 18 exculpatory statements. The government says, well, we only introduced it for a very narrow purpose, to show Mr. Abari's residence. That argument might, your time's short. Would you address the prejudice when the gun is found underneath him and his DNA is in the magazine? I'm assuming, and I want to rephrase your question, but I'm assuming you're saying isn't the evidence of Mr. Abari's complicity, at least in that instance, overwhelming? And how can it be prejudicial? You're pretty good. Go ahead. Okay. What's interesting here is that if I understand this correctly, the DNA was found on a shell in the magazine. Yes. But it was not found. Mr. Abari's DNA was not found on the gun. It was not found on the handle. It was no fingerprints of Mr. Abari's were found on the gun or the handle. At best, all that shows is that Mr. Abari came in contact with one bullet, not with the gun itself. Well, no, wait. You said the magic word contact there. It's underneath him, right? That's contact. My understanding is, and I wasn't at the trial, is that it was near him and that law enforcement agents observed it when he stood up. In the transcript you're asking to introduce, he says underneath, underneath, underneath, and the police say underneath, underneath, underneath. I'm not exaggerating, I don't think. So underneath is contact, isn't it? Yes, if there's a physical touching. And this is where, unfortunately, I wasn't at the trial and Mr. Abari was. We weren't there either, but we're just reading the documents. Right. You can comment on that. Well, I spoke. That's okay. Yeah. My understanding is from the police testimony that they saw the gun after he got up. They're assuming it was underneath him. There was testimony it was next to his leg. I don't really know exactly where it was when they saw it. There may have been some video recordings from body cameras, but I just can't affirmatively answer that question. Thank you. Thank you. All right. Thank you for your argument. Ms. Middlecamp, we'll hear from you. Good morning, and may it please the Court. I am Lindsay Middlecamp. I was one of the trial attorneys on behalf of the United States at the trial below. And because both Mr. Green and Mr. Abari primarily challenged the verdicts based on the jury instruction regarding multiple conspiracies, that's where I will focus my time today as well. I do want to start with the standard of review issue, because there is debate between the briefs, and I want to address that issue for the Court, that the appropriate standard of review is abuse of discretion. That analysis starts with the question, what is being reviewed? Here it is plainly a jury instruction. And both sides are in agreement that the general rule is a jury instruction is evaluated on an abuse of discretion review, unless that jury instruction denial results in the denial of a defense. And here, as a threshold matter, that test is not met. It is not entitled to de novo review because the defendants were not denied a defense. And I would point the Court towards a 2021 decision that is not cited in any of the briefs because it didn't specifically address multiple conspiracy. It's the Asimani decision, 7F4-749 from this circuit. And there the circuit explains where does that line get drawn. When is an instruction going to a defense versus when is an instruction subject to an abuse of discretion review? And the Court explained it has to do with whether you are simply negating the elements that were charged. Here, the indictment charged a single conspiracy spanning from December 2018 through July 2019. Ultimately, the defense argument was, no, you did not prove that conspiracy existed. And as part of the challenge to the element, element one being an agreement existed between December 2018 and July 2019, in attacking that element, the defense wanted to argue it was actually a series of different unrelated conspiracies, not an agreement spanning that time. So based on the Asimani distinction, it says when a defense is just aimed at negating an element, it's abuse of discretion. When an instruction would actually go towards a different defense, most classically an affirmative defense like entrapment, like abandonment, or other affirmative defenses, only then is it subject to a de novo review. Does our Court use the term affirmative defense because the older cases don't use the term affirmative defense? In which decision, Your Honor? Oh, like Campbell says legal defense, there are many that say legal defense. They don't say affirmative defense. That's correct, Your Honor. The Campbell decision ultimately cites back to Young, and Young addressed an affirmative defense context, abandonment and entrapment. And so while I think Campbell can be fairly read as blending an abuse of discretion and de novo review, there is no analysis as to why one would apply. And the case that it cites back to, Young, is rooted in an affirmative defense context, not a different negating an element type defense. But more importantly, here you can also look at were they blocked from making that defense. Did the instruction prevent them? And if you look at the closing arguments, it is clear it did not. That is precisely what the defendant stood before the jury and did was argue the government failed to prove the agreement that they allege existed between December and July. And there was sufficient evidence to allow the argument? Pardon, Your Honor? Why did the judge allow the argument? Because it is not a sufficiency of evidence test when it comes to negating an element. And so here they were saying the government says an agreement spanned from December through July, and they didn't prove that. And the reason they didn't prove that was because the July activities were unrelated to whatever activities happened earlier. So if there was enough evidence to make the argument, why shouldn't the jury have been told the legal significance? Again, Your Honor, I don't think the test at the stage of what is the defense allowed to argue in saying the government failed to prove its burden, it's not a sufficiency of the evidence test at that stage. All right. Well, let me ask it differently then. Whether it's de novo or abuse of discretion review, would it be error to refuse the instruction if there were sufficient evidence for a jury to conclude that there were multiple conspiracies? No, Your Honor. Only an error would only follow on a de novo review if not only there was sufficient evidence to support a multiple conspiracy instruction, but also if there was not sufficient evidence supporting the single conspiracy that was charged. And here's where the case law — What case says that? You're saying if there's sufficient evidence to find a single, then there's no need to instruct on multiple, even if there's sufficient evidence to find multiple. Yes. How can that be right? Your Honor, respectfully, I think the Court is noting a confusing language issue that does exist in the cases. So I'll point the Court, for instance, to — It's also confusing analytically, which is more — Right. Agreed, Your Honor. No — no disagreement there. I think these cases can be reasonably right a few different ways. I'd point the Court first — Why don't you just address the issue head-on and without the — well, you can cite cases if you want, but I'd be interested in your analysis of it. Sure. I'll start with the case site and then I'll walk through the analysis, if that's all right. I'd point the Court towards the Haslip decision. It's a 2005 decision on a multiple conspiracy instruction question. And there the Court says if the evidence supports a finding of multiple conspiracies, we will reverse a conviction for failure to give a multiple conspiracy instruction only when the failure to give the instruction causes substantial prejudice. But then it goes on to explain how do you figure out if there was substantial prejudice. And it determines there wasn't substantial prejudice because there was sufficient evidence supporting the single conspiracy charge. How does that make sense? It makes sense, Your Honor — What that means is the jury could have found either one and therefore we have no prejudice because they found the single? Exactly, Your Honor. How can that be if they weren't told that they had the option? Because ultimately in tasking the jury with determining was there an agreement, did the evidence show that this agreement existed from December through July? If the jury determines that, yes, there was one agreement that covers these events that were presented, and especially if the defense does not challenge the sufficiency of evidence underlying that decision, and all the evidence must be construed, even if they had challenged it, the evidence would be construed favorably towards that verdict, then there can't be substantial prejudice that results. The only case — That basically means you never have to give the instruction because either there's an acquittal or there's no error. Your Honor, I think the case law supports that, that it is an abuse of discretion standard. What's the point of the instruction? The point of the instruction I think can be found in the Koteakos context, which is the only case where a Supreme Court found there was substantial prejudice, and there they said the prejudice was because the evidence didn't even show a single conspiracy. The Supreme Court said this record cannot support a single conspiracy charge, and in that context, it was clearly prejudicial to only give the jury a single conspiracy instruction. I understand that, but it seems to go against other cases that say whether it's single or multiple is a jury issue. Don't we have cases that say that? There are cases that say that, Your Honor. But in those cases, I'll give an example that's based in this record. In cases where it's a mixed question of fact and law. Were there facts in the record that show multiple conspiracies existed? And do those facts in the records actually transform a single conspiracy into multiple conspiracies? So, for example, Mr. Hall in this case offered limited testimony that he had a side business involving cocaine. It didn't involve Mr. Abari. It didn't involve Mr. Green. He noticed that Mr. Abari and Mr. Green were far more profitable dealing heroin, and so he started to taper off the cocaine business and shift towards heroin and fentanyl. Had the government presented evidence and attempted to hold Mr. Abari and Mr. Green liable for cocaine volumes and wrapped that up into the same conspiracy charge, in that circumstances and those sets of fact, the defense may have been entitled to a multiple conspiracy instruction or at least could have had a stronger argument that one was going to result in prejudice to them. Otherwise, they would be held responsible for cocaine amounts. But that's just not what was charged here. They're saying they don't need the instruction because as a matter of law, we would have to reverse like in Katiakos. Taken as a body of evidence, that is how I read the case law, Your Honor, that ultimately the question always seems to loop back to a sufficiency of evidence analysis on the single conspiracy charge. And I think it's intentional that the defense did not raise that here. They seem to anticipate that there was sufficient evidence supporting the conviction of count one, that it would not be a strong attack to say that there wasn't. And yet all of the conspiracy instruction cases ultimately lead back to a question of what did the evidence actually show. And if the evidence showed a single agreement existed, then time and again this circuit has found there is no error in refusing the multiple conspiracy instruction. And certainly if there was error, there is no prejudice to the defense. It is a circular argument, but it is one that is based in the case law itself. Well, if we can avoid circular arguments, we try. I understand, Your Honor. Maybe we should take another look at that and see if those circular cases are inconsistent with more linear cases. Ultimately, the reason I think they are written that way is because the multiple conspiracy case is a case where the defense is saying, okay, don't interpret the government's evidence as a single agreement. You should interpret it not as proof to these core elements charged. You should interpret it differently. That is the argument they were able to make at closing, so it didn't cut off any defense. They were able to stand before the jury and say, don't assume the July drugs are tied to the same agreement as the January drugs, are part of the same agreement as the April drugs. You should treat these as unrelated bodies of evidence, unrelated events, and even unrelated parties. That argument was presented to the jury, and ultimately this court is tasked with evaluating instructions as a whole, and if the instructions as a whole adequately stated the law and allowed the jury to evaluate the defense arguments properly, then there is no error. And that's exactly what happened here. Why shouldn't the law be, if it's a reasonable dispute and the jury could have found one conspiracy or a reasonable jury could have found multiple conspiracies, then it's a jury issue and the jury should be told about what the law is. Why shouldn't that be the law? Your Honor, I would say in this case, even if we assume that should be the law and if this court decided it is the law, in this case, then the question turns to, was there sufficient evidence to support the multiple conspiracy instruction they asked for? So what they asked for was an instruction to the jury that said, those July drugs had nothing to do with an agreement between Mr. Green, Mr. Arbari, and Mr. Hall. They had to do with some guy named Leon Mooney who was not part of this case. Even if the law is, as this court is suggesting it perhaps should be, that it should all be put to the jury to sort out, then the question passes to, is there even enough in the record to put that question to the jury or is that so absent from the trial that it would merely be confusing and essentially inventing evidence that wasn't even in the record? Are you making a no harm, no foul question or argument? We get there eventually, Your Honor, yes. But the first question is, did the district court have discretion to decide, based on 10 days of jury trial, what evidence was appropriately supporting the instructions requested? The district court exercised that discretion properly in finding this evidence exclusively showed a single conspiracy. It did not support the theory that multiple ---- Matter of law ---- Correct. ---- was either a single conspiracy or no conspiracy. Correct, Your Honor. I can understand that argument, but why is that what the evidence showed? Why wasn't it debatable? Your Honor, several reasons it wasn't debatable. First is that the ---- it is a blend of both the evidence and then does that evidence fit the legal definition of when a single conspiracy becomes multiple conspiracies. And the case law is clear that evidence showing people competed with one another does not make a single conspiracy multiple conspiracies. If it were, then every single drug case would be entitled to a multiple conspiracy instruction. Evidence that people came and left from a conspiracy, that different suppliers came and left, that people were arrested or went through a dry spell or otherwise evolved the composition of a drug conspiracy. The case law is clear that none of that transforms a conspiracy into separate individual conspiracies. The only case such as Neville's or the Koteyaku's case where the courts have said, all right, this is clearly multiple conspiracies or at least could have been determined to be ---- Again, what was the name of that case? The Neville's decision, which the defense has cited as well as the government. That is a decision where a co-conspirator took the stand and said, I had a separate deal with my friend. I sold him drugs at cost. That friend may have experienced some prejudice if that friend who bought drugs at cost, unaware of and unrelated to the rest of the activities, had had the spillover effect of evidence of the rest of the conspiracy against him. And even then, once the court said, maybe that could have made a multiple conspiracy instruction appropriate, even then it turned to the next step of what was the prejudice. And it found, again, somewhat circular, because there was sufficient evidence to support a single conspiracy existed, there was no substantial prejudice to the other defendants who were trying to raise that argument. Is it the key to Neville's that one agreement was entirely separate from the other agreement? I read it as that way, Your Honor, yes. I think the court uses the term entirely, correct? Yes. Yes. So that's a different situation, right? It's certainly different from the evidence in this case. Here, what the jury was asked to decide was did an agreement exist spanning December to July. What's the difference between entirely separate and separate? Your Honor, if there isn't a clear line in the law, it certainly wasn't met in this case. Where that line could have existed, I'm not sure. But I will say that the district court specifically warned or told the defense before evidence was closed, right now, this argument that the July drugs belonged to an entirely different group of people doesn't bear out in any of the evidence. I believe the district court even said, in my wildest imagination, it's not there. You would need to call Minnie Lloyd or present some other evidence to create a nexus between this name of Leon Mooney and these July 2019 drugs. The defense exercised its strategy rights to not do that. So by the end of trial, there was no evidence in the record that could support this alternative theory that the July drugs were tied to some other person who wasn't part of a conspiracy. The only references to Leon Mooney that did come in connected him to Mr. Green as maybe a potential other uncharged co-conspirator that Mr. Green supplied. What about the April incident? The April incident was adequately described by the instructions that were given and the arguments of counsel. And that's where that test lies. There is no question that Mr. Hall testified by April of 2019. We weren't happy with Mr. Green's business practices. We were looking into other suppliers. And so the drugs that were seized in April 2019 didn't come from Mr. Green. So if two distributors say, decide at some point, we're done with the supplier, we're going to go off on our own and find a new supplier, and could that be a separate or entirely separate conspiracy? Your Honor, with that level of information and those facts, the case law would suggest it could still be part of a single conspiracy. It could be. You could have two different suppliers to one conspiracy. But could it also be a separate one? It would really depend on what the evidence was of what that splitting looked like, Your Honor. And that evidence was not here. Here, in fact, there was evidence that when Mr. Abari was briefly taken out of the every time he went back and called Mr. Green or texted Mr. Green and started re-upping his supply. But I'll jump to the prejudice part because I think ultimately that's, if you take a de novo review, if you start to look at the sufficiency of the evidence, ultimately the question would land on what was the prejudice here. And there's several reasons there was no prejudice to either Mr. Abari or Mr. Green. First and foremost, they were fully able to make this argument to the jury. And you can see that the jury was careful in compartmentalizing the different events. Part of how we know that is the jury acquitted Mr. Abari of the substantive count related to the April drugs. They were looking carefully at the different drug seizures and determining who can be attributed to which. And they determined that at least as to the count against Mr. Abari and the April drugs, the government didn't meet its burden, and they did not convict him on that count. They also were separately asked to look at the July drugs on an individual possession with intent to distribute count against Mr. Green. And they determined that there was sufficient evidence to meet that burden and found Mr. Green knowingly possessed those drugs. And so the verdict form itself is clear that the jury was tasked with compartmentalizing the seizures. The verdict form also allowed the jury and required them to decide, had the government proven 0 to 40, 40 to 400, or 400 and more. And so there is no argument here that the jury wasn't adequately given those opportunities and, in fact, exercised those opportunities to reach a conviction based on the evidence. Ultimately, it does loop back to the question of, did the evidence sufficiently support the single conspiracy that was charged? The jury was tasked with that question. The evidence plainly showed that Mr. Green and Mr. Abari and their co-conspirator, Mr. Hall, had an agreement that just because Mr. Hall and Abari were taken out of the picture by spring of 2019 did nothing to stop Mr. Green from continuing sales, even sales to some of the same customers that had been getting from Mr. Abari and Mr. Hall earlier. That would be Wallace Johnson and his testimony. And as this Court pointed out, even if there were even the hint of potential prejudice with aggregated amounts, Mr. Hall and Mr. Johnson's testimony plainly got the volume over the 400-gram threshold, even just for that earliest part. Is Hall's testimony clear about what date he saw the 1,000 grams of heroin? Your Honor, I did look. It's on page 411 of the transcript that Mr. Hall is asked. He doesn't specify a date, but he was clearly testifying within the timeframe when he was not incarcerated and acting with Mr. Green, which would have been between December and April. And I believe he placed it closer to the December and February timeframe. Thank you. With that, Your Honor, I am out of time. So I will leave the Court with the overarching argument that a single conspiracy existed, it was proven, the convictions appropriately reflect the evidence, and the district court did not abuse its discretion. Therefore, we ask that the verdicts below be affirmed in their entirety. Thank you. Very well. Thank you for your argument. Mr. Richman, we'll hear rebuttal. Thank you, Your Honor. I want to start by quoting from the Nevels case, where the evidence can support a finding of multiple conspiracies, a multiple conspiracy instruction must be given. So whether the standard of review is de novo or abuse of discretion, here the district court erred. The government posed the question as, is there enough in the record to put to the jury the question of multiple conspiracy instructions? Judge Davis answered that question in the affirmative when he allowed me to argue it to the jury in closing. If I had stood up and said, Mr. Green could not have been part of this conspiracy because he was in Europe during those months, I would have been shut down, and properly so, because the record would not have supported that. Here, the record supported multiple conspiracies. And the fact that the evidence may have been sufficient to support a single conspiracy does not negate the need for a multiple conspiracy instruction if the evidence also supports that. Because the evidence is, the case law is clear that this is a jury question. Do you think our cases are inconsistent? Do we have some cases that say if the evidence supports a single, then there's no error? I think there are cases that have, I think there is some loose language, is what I would say. But if you parse the cases, I think that what those cases really stand for is the proposition that actually the record in those cases does not sufficiently support a multiple conspiracy instruction. And I would urge the Court not to issue a decision that essentially says that you never need a multiple conspiracy instruction. In this case, Mr. Green was prejudiced because the jury was allowed to aggregate drug quantities to more than 400 grams, which converted a mandatory 10 into a mandatory 15. Thank you, Your Honor. All right. Thank you to all counsel for your arguments. The case is submitted. The cases are submitted, and the Court will file a decision in due course. Counsel are excused. Thank you.